**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JAMES HURLY, | : | CIVIL ACTION NO. 11-2475 (MLC) |
| Plaintiff, | : | **O P I N I O N** |
| v. | : | |
| PFIZER INC., | : | |
| Defendant. | : | |

**THE PLAINTIFF**, James Hurly, commenced this action in state court on March 24, 2011, against the defendant, Pfizer Inc. ("Pfizer"), raising claims for breach of express warranty and various theories of products liability.  (Dkt. entry no. 1, Rmv. Not., Ex. A., Compl.)  Hurly's factual allegations and legal claims stem from his use of a pharmaceutical sold and distributed by Pfizer, Lipitor.  (Id. at ¶ 5, 32-37.)

**PFIZER** now moves for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 and Local Civil Rule 56.1, arguing that the action is barred by the applicable statute of limitations, N.J.S.A. § 2A:14-2(a).  (Dkt. entry no. 14, Mot.; dkt. entry no. 14-1, Pfizer Br.)  Hurly opposes the motion and argues that the "Discovery Rule", as applied to the facts of this case, tolls the statute of limitations.  (Dkt. entry no. 15, Opp'n Br. (citing and discussing, inter alia, Goodman v.

Mead-Johnson & Co., 534 F.2d 566, 570-71 (3d Cir. 1976)).)  The Court resolves the Motion for Summary Judgment (the "Motion") without oral argument pursuant to Local Civil Rule 78.1(b).

**THE COURT** shall grant relief pursuant to Rule 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  The Court will, however, deny a motion for summary judgment if the non-moving party "make[s] a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Galli v. N.J. Meadowlands Comm'n, 490 F.3d 265, 270 (3d Cir. 2007) ("To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial.").  When resolving a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party and makes all reasonable inferences in that party's favor.  Galli, 490 F.3d at 270; Goodman, 534 F.2d at 573 ("The non-movant's allegations must be taken as true and, when those assertions conflict with those of the movant, the former must receive the benefit of the doubt.").

**THE COURT** now finds that Hurly's primary care physician, Dr. Waters ("Waters"), prescribed Lipitor in March of 2006 and that Hurly thus used Lipitor until September of 2008. (Compl. at ¶ 31; dkt. entry no. 14-2, Pfizer Statement of Facts ("SOF") at ¶¶ 10, 14; Response to Pfizer SOF at ¶¶ 10, 14.) Waters discontinued this prescription in September of 2008 after Hurly complained, inter alia, of loss of sensation in his toes. (Pfizer SOF at ¶ 11; Response to Pfizer SOF at ¶ 11.) Because Hurly's condition did not improve after Waters discontinued the Lipitor prescription -- because Hurly's condition appeared to worsen -- Waters referred Hurly to a neurologist, Dr. Viradia ("Viradia"), in February of 2009. (Pfizer SOF at ¶ 16; Response to Pfizer SOF at ¶ 16; dkt. entry no. 14-6, Hurly Dep. at 49 (noting that Waters "expected these symptoms to go away, and they got worse").) Viradia, on March 27, 2009 diagnosed Hurly with neuropathy, i.e., nerve damage, and informed Hurly that such damage may have been caused by Lipitor. (Dkt. entry no. 16, Hurly SOF at ¶ 7; dkt. entry no. 19-1, Response to Hurly SOF at 39-40; Hurly Dep. at 49-50.)

**PFIZER** acknowledges that Hurly commenced this action on March 24, 2011, within two years of Hurly's March 27, 2009 appointment with Viradia. (See Pfizer SOF at ¶ 16.) Pfizer argues, however, that Hurly earlier knew or should have known

that Lipitor was a possible cause of his injuries; Pfizer argues that Hurley knew of should have known of the relationship between Lipitor and his injuries between September of 2008, when Waters discontinued Hurly's Lipitor prescription, and February of 2009, when Waters referred Hurly to Viradia.  (Pfizer Br. at 12-15.)  In support of this argument, Pfizer cites two sources of information.  Pfizer first cites Waters's contemporaneous notes of a September 28, 2008 appointment with Hurly, in which Waters wrote, "Complains of weakness/↓ energy – ? med effect – ? Lipitor ? Neuropathy – ? Lipitor – ? Other" and noted that he discussed the same with Hurly.  (Pfizer SOF at ¶ 13; Response to Pfizer SOF at ¶ 13; dkt. entry no. 14-2, Hurly Medical Records at Bates-stamped page no. JHURLY-3DCR-00059 ("Medical Records").)  Pfizer also cites the following passage from Hurly's deposition:

> A.   . . . I asked [Viradia], I says, could Lipitor have caused this, or did Lipitor cause it, something to that.  And he said yes.  He was very definite about it.
> Q.   And why did you ask him if Lipitor caused it?
> A.   Because there was -- it was a possibility that that could have been a cause, at some time in the past in talking -- well, I was taken off Lipitor by Dr. Waters.  And, you know, I thought that he was doing that because that could have possibly have been a cause.  He's very thorough. He likes to try to find things -- you know, try different things to determine – he's like an investigator.  He expected these symptoms to go away, and they got worse.  So I didn't -- I didn't think it was the cause until, you know, I asked Dr. Viradia.

4

>   Q. And Dr. Waters took you off of Lipitor in September or October of 2008; is that correct?
>   A. Yes.
>   Q. And at that time, he told you that Lipitor was possibly the cause?
>   A. No. He took me off of it. And I kind of thought to myself that, you know, he does things for a reason, so that -- I got the impression that, you know, maybe it could have been -- like he was -- I think he was trying things.

(Hurly Dep. at 49-50.)

**HURLY** denies that he and Waters discussed the possibility that Lipitor caused his neuropathy or other injuries. (Hurly Dep. at 12, 50, 90, 92.) He instead claims that he did not know and argues that he reasonably should not have known that Lipitor was a possible cause of his injuries before his March 27, 2009 appointment with Viradia. (Response to Pfizer SOF at ¶ 14; Hurly Dep. at 45.)

**THE COURT** now views the facts presented by both Pfizer and Hurly in the light most favorable to Hurly, the non-moving party. See, e.g., Goodman, 534 F.2d at 573-75. The Court finds that the parties have presented disputed material facts that tend to prove or disprove that Hurly actually knew that Lipitor was a possible cause of his injuries before March 24, 2009. (Compare Medical Records with Hurly Dep. at 12, 50, 90, 92.)[1]

---

[1] Viewed in the light most favorable to Hurly, Hurly's deposition transcript indicates only that Hurly recognized a potential causal relationship between Lipitor and his injuries during his March 27, 2009 appointment with Viradia. They do not demonstrate that Hurly earlier recognized such a relationship.

5

Although Pfizer argues in its brief that Hurley cannot rely "on his own self-serving denial of Dr. Waters' testimony and contemporaneous medical records", we disagree.  A reasonable fact finder could afford more credit to Hurly's testimony than to Dr. Waters's notes.  This is not a case where opposing parties have told "two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it".  But cf. Tindell v. Beard, 351 Fed.Appx. 591, 595 (3d Cir. 2009) (denying plaintiff's summary judgment claim in light of clearly contradictory video evidence).

**THE COURT** also finds that we cannot grant summary judgment upon evidence -- contradicted or otherwise -- that tends only to prove that Hurly should have known that Lipitor was a possible cause of his injuries.  Such evidence must be held for and ultimately considered at trial.  See Goodman, 534 F.2d at 575 ("At best there are inferences which can be drawn as to [the injured party's] state of knowledge.  Admittedly they are strong inferences, but they are still inferences which can only be drawn by the finder of fact, in this case the jury.").  Although the New Jersey Superior Court may resolve factual disputes concerning application of the statute of limitations and the Discovery Rule during resolution of a motion for summary judgment, this Court may not.  Compare Lopez v. Swyer, 300 A.2d 563 (N.J. 1973) with Goodman, 534 F.2d at 573 ("the federal

policy favoring jury decisions of disputed fact questions must prevail over the state practice of allocating to the court the decisions as to the time of discovery of the cause of action. Thus, if there are any disputed issues of fact, we cannot affirm their resolution by the court on the authority of Lopez v. Swyer").

**PFIZER** argues that this Court may resolve factual disputes relating to application of the statute of limitations and the Discovery Rule at this stage, notwithstanding the explicit rejection of that practice in Goodman. (Pfizer Br. at 16 n.4; dkt. entry no. 19, Pfizer Reply Br. at 13-15.) Pfizer argues that Goodman "has been superseded by subsequent decisions of the New Jersey Supreme Court, as evidenced by decisions of this District where the Court has acted as fact finder for purposes of applying the discovery rule." (Pfizer Br. at 16 n.4 (citations omitted).)

**THE COURT** finds Pfizer's argument unpersuasive. This Court is bound by precedent of the United States Court of Appeals for the Third Circuit. See, e.g., Venza's Auto, Inc. v. Montagnaro's, Inc., No. 10-3336, 2011 WL 1098993, at *7 (D.N.J. Mar. 21, 2011). This Court, furthermore, "does not have the discretion to disregard controlling precedent". Vujosevic v. Rafferty, 844 F.2d 1023, 1030 n.4 (3d Cir. 1988). Because the Goodman panel, after weighing the efficacy of resolving factual

7

disputes during the summary judgment stage against the federal policy of allowing juries to resolve factual disputes at trial, rejected the practice espoused by the New Jersey Supreme Court in <u>Lopez</u> and its progeny, we are bound to do the same.  This Court cannot and will not adopt a practice explicitly rejected by the United States Court of Appeals for the Third Circuit.

    The Court will enter an appropriate Order.

                            s/ Mary L. Cooper
                            **MARY L. COOPER**
                            United States District Judge

Dated:    April 9, 2012